# EXHIBIT 1



**Executive Liability Division**
230 W. Monroe St., Suite 2900
Chicago, IL 60606
Fax (312) 663-4624

September 4, 2018

MS JESSICA LEVINS
MARSH USA INC.
540 W. MADISON STREET, SUITE 1200
CHICAGO, IL 60661-2591

RE:    APPLIANCE RECYCLING CENTERS OF AMERICA INC.
       Policy No.:    DOL3664294
       Policy Period: 9/1/2018 - 6/1/2019

Dear MS LEVINS:

Enclosed please find the original policy for the above mentioned Insured.  Thank you for
choosing the Executive Liability Division for your client's insurance needs.  We appreciate your
efforts in securing this placement and look forward to working with you again in the future.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Carrie L. Boruta
Senior Financial Products Underwriter I
(312) 385-4251
cboruta@gaig.com

Great American Insurance Company • Agricultural Insurance Company • Agricultural Excess and Surplus Insurance Company • American Alliance Insurance Company•
American Dynasty Surplus Lines Insurance Company • American National Fire Insurance Company • American Spirit Insurance Company • Eagle American Insurance
Company • Eden Park Insurance Company • Great American Lloyd's Insurance Company • Great Texas County Mutual Insurance Company • Seven Hills Insurance Company.

**MEMBERS OF AMERICAN FINANCIAL GROUP**                                    A13002

**GREATAMERICAN**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

*ExecPro* <sup>sm</sup>
# DECLARATIONS
for
Public Solution
Insurance Policy

Insurance is afforded by the company indicated below:  (A capital stock corporation)

☒ Great American Insurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Insurer**.

Policy Number: DOL3664294                    Policy Form Number:  D23100-G

Note:  This is a  claims made policy, please read it carefully.  Amounts incurred as **Costs of Defense** shall  reduce the Limit of Liability available to pay judgments or settlements and shall also be applied against the retention.  This Policy does not provide for any duty by the **Insurer** to defend those insured under the Policy.

| | | | | | | |
|---|---|---|---|---|---|---|
| Item 1. | **Corporation**: | APPLIANCE RECYCLING CENTERS OF AMERICA INC. | | | | |
| | Mailing Address: | 175 JACKSON AVENUE NORTH, SUITE 102<br>HOPKINS, MN 55343 | | | | |
| | Attention: | VIRLAND JOHNSON- CFO | | | | |
| Item 2. | **Policy Period**: | From: | 9/1/2018 | To: | 6/1/2019 | |
| | | | *(Month, Day, Year)* | | *(Month, Day, Year)* | |
| | | (Both dates at 12:01 a.m. Standard Time at the address of the **Corporation** as stated in Item 1) | | | | |

Item 3.  Limit of Liability (Inclusive of **Costs of Defense**):

    $5,000,000           Aggregate Limit of Liability for the **Policy Period**

Item 4.  Retentions:

    Insuring Agreement A:

| | |
|---|---|
| Each **Claim**: | $0 |

    Insuring Agreements B and/or C:

| | |
|---|---|
| Each **Claim** other than a **Securities Claim** or **Employment Practices Claim**: | $100,000 |
| Each **Employment Practices Claim**: | $100,000 |
| Each **Securities Claim**: | $250,000 |

| | | |
|---|---|---|
| Item 5. | Premium: (Prepaid) | $52,353 |

Item 6.  Endorsements Attached

  D23309      D23428 (1)    D23631 (3)    D23713 (1)    D23759    DTCOV    IL7324

Item 7.  Prior and Pending Date  4/1/2003

Item 8.  Notices:  **Notice of Claim** shall be addressed to:            All other notice shall be addressed to:
                             Great American Insurance Group            Great American Insurance Group
                             Executive Liability Division, Claims Department            Executive Liability Division
                             P.O. Box 66943, Chicago, Illinois 60666            P.O. Box 66943, Chicago, Illinois 60666

These Declarations, along with the completed and signed Proposal Form and the *Private Solution Insurance Policy*, shall constitute the contract between the **Insured** and the **Insurer**.

**Countersignature
Not Required**

           (Authorized Representative)            (Countersignature Date)

**THIS IS A CLAIMS MADE POLICY, READ IT CAREFULLY**



*ExecPro*<sup>sm</sup>
Public Solution

# MINNESOTA AMENDATORY ENDORSEMENT

In compliance with the insurance regulations of the State of Minnesota, the following provisions are added to the Policy.  In the event that a similar provision is already contained in the Policy, the provisions of this endorsement shall take precedence over such similar provisions.

1.   It is understood and agreed that Section IX.A. of the Policy is amended by the addition of the following:

Section IX.A.(4)   Proof of mailing of any notice of cancellation and/or non-renewal shall be sufficient proof of notice.

2.   This Policy may be cancelled by the **Corporation** by surrender of the Policy to the **Insurer**.

3.   CANCELLATION FOR NON-PAYMENT OF PREMIUM

Insurance under this Policy may be cancelled by the **Insurer** if the **Corporation** fails to discharge when due any of its obligations in connection with the payment of premium for such Policy or any installment thereof by mailing to the **Corporation** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.  The notice of cancellation must state the reason for cancellation.  No cancellation for non-payment can be effective if payment of the amount due is made before the effective date of cancellation stated in the notice.

4.   The **Insurer** must provide at least sixty (60) days notice prior to the renewal date or anniversary date of the Policy in order to initiate a rate change less favorable to the **Corporation**.  If the **Insurer** has not so notified the **Corporation**, the **Corporation** may elect to cancel the renewal Policy within the sixty (60) day period after receipt of the notice.  Earned premium for the period of coverage, if any, shall be calculated pro rata upon the prior rate.

5.   The **Insurer** must provide at least sixty (60) days notice of intention not to renew before the Policy expiration date unless the **Corporation** has insured elsewhere, has accepted replacement coverage, or has requested or agreed to non-renewal.  If sixty (60) days notice is not provided the Policy will continue in force until sixty (60) days after a notice of intent to not renew is received by the **Corporation.**

Insured:  APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:  9/1/2018 to Policy Expiration                    Policy Number:  DOL3664294

Countersigned by: _____         Endorsement Effective Date:  9/1/2018
*Authorized Representative*



*ExecPro*<sup>sm</sup>
Public Solution

## MINNESOTA AMENDATORY ENDORSEMENT

6.   It is understood and agreed that Section VIII.A. of the Policy is deleted and replaced with the following:

A.   The **Insureds** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim:**

(1)   as defined in Section III.A. (1) which is made during the **Policy Period** or during the **Discovery Period** if exercised.   Such notice shall be given prior to the end of the **Policy Period** or the **Discovery Period** if exercised;

(2)   as defined in Sections III.A. (2), (3) and (4) which is made during the **Policy Period** or during the **Discovery Period** if exercised.   Such notice shall be given as soon as practicable, but in no event later than ninety (90) days after the end of the **Policy Period** or the **Discovery Period** if exercised.

The **Insureds** failure to report a **Claim** pursuant to (1) above shall not negate the right to report a **Claim** pursuant to (2) above under this Policy or any renewal thereof.

7.   OTHER

(a)   All payments for any amount finally agreed upon in settlement of all or part of any **Claim** shall be made within five (5) business days from the receipt of the agreement by the **Insurer** or from the date of the performance by the claimant of any conditions set by such agreement, whichever is later.

(b)   An insurance company providing insurance coverage or its reinsurer for that underlying insurance coverage may not proceed against its **Insured** in a subrogation action where the **Loss** was caused by the non-intentional acts of the **Insured**.

(c)   An insurance company providing insurance coverage or its reinsurer for that underlying insurance coverage may not subrogate itself to the rights of the **Insured** to proceed against another person if that other person is insured for the same **Loss**, by the same company. This provision applies only if the **Loss** was caused by the nonintentional acts of the person against whom subrogation is sought.



*ExecPro*<sup>sm</sup>
Public Solution

# MINNESOTA AMENDATORY ENDORSEMENT

8.    **PREJUDGMENT INTEREST**

It is understood and agreed that Section VII. of the Policy is amended by the addition of the following:

F.    If the claimant or his/her attorney makes a settlement offer resolving the **Claim** against all **Insureds** and the **Corporation**, (the principal amount of which is within the applicable policy limits) and the **Insureds** and the **Corporation** agree to their portion of such settlement offer, but the **Insurer** rejects its portion of the settlement offer, then, in the event a judgment is entered against an **Insured,** (the principal amount of which is within the applicable policy limits), the **Insurer** shall be liable for all **Prejudgment Interest** due on said judgment entered against the **Insureds**, even if the payment of said judgment, plus such **Prejudgment Interest** thereon, totals a sum in excess of the Policy Limit of Liability. If the **Insured** or the **Corporation** rejects a settlement offer made by a claimant or his or her attorney, and the **Insurer** consented to said settlement, then the **Insurer** shall not be liable for any **Prejudgment Interest** due on any subsequent judgment.

It is further understood and agreed that Section III. of the Policy is amended by the addition of the following:

S.    **"Prejudgment Interest"** shall mean the interest due on a judgment or award for the recovery of money, from the time of the verdict, award, or report until judgment is finally entered which shall be computed by the court administrator or arbitrator and added to the judgment or award. **Prejudgment Interest** shall not include pre-verdict, pre-award or pre-report interest. The **Prejudgment Interest** shall be computed as provided for in Section 549.09 Subdivision 1.(c) of the Minnesota Statutes.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*ˢᵐ
Public Solution

# M&A CLAIM RETENTION

It is understood and agreed that the following changes are made to the Policy:

1.    Section I. is deleted and replaced with the following:

   **A.**    The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**, a **Securities Claim** or a **M&A Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

   **B.**    The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**, a **Securities Claim** or a **M&A Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.

   **C.**    The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured Entity** shall be legally obligated to pay as a result of a **Securities Claim** or a **M&A Claim** first made against the **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

2.    Section III.P. is deleted and replaced with the following:

   **P.**    "**Securities Claim**" shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) other than a **M&A Claim** made against an **Insured** alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law, which is:

   (1)    brought by any person or entity arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

---

Insured:  APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:  9/1/2018 to Policy Expiration          Policy Number:  DOL3664294

Countersigned by: _____          Endorsement Effective Date:  9/1/2018
*Authorized Representative*



*ExecPro*<sup>sm</sup>
Public Solution

# M&A CLAIM RETENTION

(2)    brought by a security holder of the **Company**, with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action, or derivatively on behalf of the **Company**.

"**Securities Claim**" shall also include an administrative or regulatory proceeding alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law against the **Company**, but only if and only during the time that such proceeding is also continuously maintained against an **Insured Person**.

3.    Section III. is amended by the addition of the following:

"**M&A Claim**" shall mean any **Claim** (other than a **Securities Claim** which alleges a violation of the Securities Act of 1933, the Securities Exchange Act of 1934 or any state blue sky law, including any rule or regulation promulgated thereunder) which is based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged breach of fiduciary duty or violation of any federal, state, local or foreign law, regulation, or rule, whether statutory or common law, by any **Insureds** with respect to any actual or proposed:

(1)    merger, consisting of the combining or uniting of two or more existing related or unrelated corporations (one of which is an **Insured**), effected by the transfer of property to one of the corporations which continues its existence, while the other(s) are merged or absorbed into it;

(2)    consolidation, consisting of the combining or uniting of two or more existing related or unrelated corporations (one of which is an **Insured**) into a new corporation; and/or

(3)    purchase and/or sale of assets either by or to an **Insured**, involving:

a.    the purchase or acquisition by one corporation of a controlling stock interest in another related or unrelated corporation; and/or

b.    the purchase or acquisition by one corporation of substantially all of the assets of another related or unrelated corporation.



*ExecPro*<sup>sm</sup>
Public Solution

# M&A CLAIM RETENTION

4.      With respect to any **M&A Claim**, Item 4. of the Declarations is amended to state:

Insuring Agreement I.A.:

Each **M&A Claim**: $ _____0_____

Insuring Agreements I.B. and/or I.C.:

Each **M&A Claim**: $ ____500,000____

No other Retention shall apply to any **M&A Claim**. The **M&A Claim** Retention shall apply to all **Loss**, which includes **Costs of Defense**, for such **Claim**. To the extent that the same **Claim** or a single **Claim** (as described in Section VI.B.) constitutes both a **M&A Claim** and a **Securities Claim**, then only the Retention for the **M&A Claim** shall apply to such **Claim**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*<sup>sm</sup>

Public Solution

# ELITE COVERAGE

It is understood and agreed that the following changes are made to the Policy:

Sub-Limit of Liability for Investigative Costs Coverage for Shareholder Derivative Demand

1.   Section I. of the Policy is amended by the addition of the following:

   **D.**   Subject to the Sub-Limit stated in Section V. of the Policy (as amended by this endorsement), the **Insurer** shall pay on behalf of the **Company** all **Investigative Costs** resulting from any **Shareholder Derivative Demand** first made during the **Policy Period** or the **Discovery Period** for any actual or alleged **Wrongful Act** of a **Director** or **Officer**.

2.   Section III. of the Policy is amended by the addition of the following:

   "**Shareholder Derivative Demand**" shall mean a written demand by one or more shareholders of the **Company**, upon the Board of Directors (or similar management body or any committee thereof) of the **Company** to initiate a civil proceeding in a court of law against any individual **Director** or **Officer**.

   "**Investigative Costs**" shall mean reasonable and necessary costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the **Directors, Officers**, or employees of the **Company**) incurred by the **Company** (including its Board of Directors or similar management body or any committee thereof) in connection with the investigation or evaluation of any **Shareholder Derivative Demand**.

3.   Section V.A. of the Policy is deleted and replaced with the following:

   **A.**   The **Insurer** shall be liable to pay one hundred percent (100%) of **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the applicable Limit of Liability stated in Item 3 of the Declarations; provided, however, coverage for **Investigative Costs** shall not be subject to any Retention;

Insured:   APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:   9/1/2018 to Policy Expiration                    Policy Number:   DOL3664294

Countersigned by:   _____                    Endorsement Effective Date:   9/1/2018
                                *Authorized Representative*



*ExecPro*[sm]
Public Solution

# ELITE COVERAGE

| Additional Discovery Options |
| :--- |

Section II. is deleted and replaced with the following:

**Section II. Discovery Period**

**A.**    In the event the **Insurer** refuses to renew this Policy or the **Corporation** chooses to cancel or not renew this Policy, the **Corporation** shall have the right, upon satisfaction of the terms described in Section II.B. below, to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during an additional period of twelve (12) months to seventy-two (72) months after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**. This additional period shall be referred to in this Policy as the **Discovery Period**.

**B.**    As a condition precedent to the right to purchase the **Discovery Period**, the total premium for this Policy must have been paid, and a written notice of election together with payment of the appropriate premium for the **Discovery Period** must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period**. For a **Discovery Period** of twelve (12) months, the **Insured** shall pay fifty percent (50%) of the annual premium. For any other **Discovery Period**, the premium shall be determined by the **Insurer** at the time the **Insured** provides written notice of its request for a **Discovery Period**.

**C.**    The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the **Discovery Period** shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the **Discovery Period** is considered to be part of, and not in addition to, the **Policy Period**.

**D.**    The **Discovery Period** is not cancelable and the entire additional premium for the **Discovery Period** shall be deemed fully earned at its inception.

| Amendment to Definition of **Loss** |
| :--- |

1.    Section III.L. of the Policy is deleted and replaced with the following:



*ExecPro*<sup>sm</sup>
Public Solution

## ELITE COVERAGE

**L.** "**Loss**" shall mean settlements and judgments, pre-judgment and/or post-judgment interest, compensatory damages, punitive, aggravated or exemplary damages or the multiple portion of any multiplied damage award, **SOX 304/SOX 308/Dodd-Frank 954 Costs**, **Investigative Costs** and **Costs of Defense**.

**Loss**, other than **Costs of Defense**, shall not include:

(1)    criminal or civil fines or penalties imposed by law;

(2)    taxes;

(3)    any portion of damages, judgments or settlements arising out of any **Claim** alleging the **Company** paid an inadequate price or consideration for the purchase of any securities but solely with respect to coverage provided under Insuring Agreements I.B. and I.C.;

(4)    costs incurred in connection with cleaning up, removing, eliminating, abating, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**;

(5)    any amount incurred by any **Insured** in a proceeding or investigation that is not at that time a **Claim**, even if such amount also benefits the defense of a **Claim** and even if such proceeding or investigation subsequently gives rise to a **Claim**; provided, however, that this subparagraph shall not apply to otherwise covered costs, charges, fees and expenses incurred by an **Insured Person** as a result of an **Inquiry**; or

(6)    any matter which may be deemed uninsurable under the law pursuant to which this Policy is construed;

Notwithstanding subparagraph (6) above, in a **Securities Claim** alleging violations of either Sections 11, 12 or 15 of the Securities Act of 1933 or Section 20(a) of the Securities Act of 1934, as amended, or similar provisions of any federal securities law, the **Insurer** shall not assert the portion of any amounts incurred by any **Insureds** attributable to such violations constitutes uninsurable loss and shall treat that portion of all settlements, judgments and **Costs of Defense** as constituting **Loss** under the Policy.



*ExecPro*<sup>sm</sup>
Public Solution

## ELITE COVERAGE

Further, notwithstanding subparagraphs (1) and (6) above and solely with respect to coverage provided by Insuring Agreement I.A., "**Loss**" shall also mean:

(7)    civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the U.S. Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and

(8)    subject to the Sub-Limit stated in Section V. of the Policy (as amended by this endorsement), civil penalties assessed against any **Insured Person** pursuant to Section 7 of the UK Bribery Act.

It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

| Amendment to Subsidiary Definition |
|---|

1.    Section III.Q.(4) of the Policy is deleted and replaced with the following:

any entity defined above and created or acquired by the **Company** after the inception date of this Policy, if the entity's total assets do not exceed thirty five percent (35%) of the total consolidated assets of the **Corporation**, as of the most recently filed 10-K or 10-Q with the Securities and Exchange Commission.

2.    Section III.Q. of the Policy is amended by the addition of the following:

any entity, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 and any similar federal legislation, which qualifies as a not-for-profit organization under the Internal Revenue Code and which is sponsored exclusively by the **Corporation**.  An entity ceases to be a **Subsidiary** under this definition on the date when it either (i) ceases to hold non-profit status under the foregoing legislation or (ii) is no longer sponsored exclusively by the **Corporation**.

| SOX 304/SOX 308/Dodd-Frank 954 Costs |
|---|

Section III. of the Policy is amended by the addition of the following:

*ExecPro*<sup>sm</sup>

Public Solution

**GREAT**AMERICAN®
INSURANCE GROUP

# ELITE COVERAGE

---

"**SOX 304/SOX 308/Dodd-Frank 954 Costs**" shall mean the reasonable and necessary fees, costs and expenses (including the premium or origination fee for a loan or bond) consented to by the **Insurer**, provided such consent shall not be unreasonably withheld, and incurred by any **Officer** to facilitate the return of amounts required to be repaid by such **Officer** pursuant to Section 304(a) or Section 308(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010; provided, however, **SOX 304/SOX 308/Dodd-Frank 954 Costs** shall not include any payment, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Officer** pursuant to Section 304(a) or Section 308(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

---

| **Inquiry** Coverage |
|---|

1. Section III. of the Policy is amended by the addition of the following:

   "**Inquiry**" shall mean:

   (1) a request or demand for an **Insured Person** either to appear at a meeting, deposition or interview or to produce documents relating to the business of the **Company** or such **Insured Person's** capacity with the **Company**, where such request or demand is:

       (a) by any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including but not limited to the U.S. Securities and Exchange Commission, U.S. Department of Justice or any attorney general);

       (b) by the enforcement organization of any securities or commodities exchange or other self-regulatory entity;

       (c) by or on behalf of the **Company**, the **Company's** Board of Directors (or similar management body) or a committee thereof: (i) arising out of a request or demand set forth in subparagraphs (a) and (b) above; or (ii) which is part of the **Company's** investigation and evaluation of a **Shareholder Derivative Demand**; or

   (2) the arrest or confinement of an **Insured Person**, whether residential or custodial, by a law enforcement authority, relating to the business of the **Company** or the **Insured Person's** capacity with the **Company**.

---

**GREATAMERICAN®**
INSURANCE GROUP

*ExecPro*™
Public Solution

# ELITE COVERAGE

**Inquiry** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in the normal review or compliance process of the **Company** by a law enforcement authority, governmental investigative authority or enforcement organization of a securities or commodities exchange or other self-regulatory entity.

2.    Section III.A. of the Policy is amended by the addition of the following:

an **Inquiry**, if reported to the **Insurer** pursuant to Section VIII. of the Policy.

3.    Coverage, subject to all other terms and conditions of the Policy, will be extended for an **Inquiry** whether or not a **Wrongful Act** is alleged.

| Employed Lawyers Coverage Extension |
| --- |

1.    Section III. of the Policy is amended by the addition of the following:

"**Employed Lawyer Legal Services Wrongful Act**" shall mean any act, omission, error, misstatement, misleading statement, neglect or breach of duty in connection with legal services provided by any **Insured Person** as a lawyer, but only if such services are performed for the **Company** and in the **Insured Person's** capacity as an employee of the **Company**. **Employed Lawyer Legal Services Wrongful Act** shall not include any act, omission, error, misstatement, misleading statement, neglect or breach of duty in connection with any legal services provided by such **Insured Person** for others for a fee.

2.    Section III.R.(1) of the Policy is deleted and replaced with the following:

(1)    any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, **Employment Practices Wrongful Act**, or **Employed Lawyer Legal Services Wrongful Act**, by any **Insured Persons** in their capacity with the **Company**;

| **Extradition** Coverage |
| --- |

1.    Section III. of the Policy is amended by the addition of the following:

"**Extradition**" shall mean any formal process by which an **Insured Person** located in any country is surrendered, arrested, or is sought to be surrendered, to any other country for trial or otherwise to answer any criminal accusation.

**GREATAMERICAN®**
**INSURANCE GROUP**

*ExecPro*ˢᵐ
Public Solution

## ELITE COVERAGE

2.      Section III.A. of the Policy is amended by the addition of the following:

an official request for **Extradition** of any **Insured Persons** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

3.      Solely with respect to any **Extradition**, **Costs of Defense** shall also mean reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Insured Person** lawfully:

(a)      opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

(b)      appealing any order or other grant of **Extradition** of that **Insured Person**.

| Amendment to Insured v. Insured Exclusion |
|---|

1.      Section III. of the Policy is amended by the addition of the following:

"**Insured Capacity**" shall mean the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** under the Policy.  It does not include any position or capacity held by such **Insured Person** in any entity other than the **Company**, even if directed or requested by the **Company**.

"**Whistleblower Conduct**" shall mean any of the activity set forth in 18 U.S.C. 1514A (a), engaged in by a whistleblower with any federal regulatory or law enforcement agency, member of the Congress or any committee of the Congress, or persons with supervisory authority over the employee, or an enforcement action by the whistleblower set forth in 18 U.S.C. 1514A (b) or any similar 'whistleblower' protection provision of any applicable federal, state, local or foreign securities law.

2.      Section IV.H. of the Policy is deleted and replaced with the following:

**H.**      by or on behalf of the **Company** provided, however, this exclusion shall not apply to any **Claim** against any **Insured Person** if such **Claim**:

(1)      is brought solely and entirely in a jurisdiction other than the United States of America, its territories and possessions;

(2)      is in the event of **Financial Insolvency**;

*ExecPro*<sup>sm</sup>

*ExecPro*

Public Solution

**GREAT AMERICAN**

**INSURANCE GROUP**

## ELITE COVERAGE

(3)     is brought derivatively by a security holder of the **Company** if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director**, **Officer** or the **Company.** It is further understood and agreed that this exclusion shall not apply to the solicitation, assistance, active participation or intervention by an **Insured Person** that has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Company** for at least two (2) years prior to the commencement of such **Claim**; or

(4)     is against any **Insured Person** who is no longer acting in an **Insured Capacity**;

provided, however, with respect to subparagraph (3) above, **Whistleblower Conduct** by an **Insured Person**, as set forth in 18 U.S.C. 1514A, shall not be considered solicitation, assistance, active participation or intervention.

---

**Amendment to Personal Profit Exclusion**

Section IV.A. of the Policy is deleted and replaced with the following:

A.     brought about or contributed to by:

(1)     any **Insureds** gaining any personal profit, financial advantage or remuneration to which they were not legally entitled. However, this exclusion shall not apply to that portion of **Loss** from a **Securities Claim** attributable to an alleged violation of Section 11,12 or 15 of the Securities Act of 1933, as amended, or similar provisions of any federal securities law; or

(2)     the deliberately fraudulent or deliberately criminal acts of any **Insureds**;

provided, however, this exclusion shall not apply unless and until there is a final, non-appealable adjudication as to such conduct in the underlying proceeding. This exclusion shall not apply to coverage provided under Insuring Agreement I.B.;

---

**Amendment to Outside Entity Exclusion**

Section IV.G. of the Policy is deleted and replaced with the following:

---



*ExecPro*<sup>sm</sup>
Public Solution

## ELITE COVERAGE

---

    **G.**    for any **Wrongful Act** of any **Insured Persons** serving at the knowledge and consent of the **Company** as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position thereof; provided, however, this exclusion shall not apply to any **Claim** against any **Insured Person** if such **Claim**:

        (1)    is brought solely and entirely in a jurisdiction other than the United States of America, its territories and possessions;

        (2)    is in the event of **Financial Insolvency**;

        (3)    is brought derivatively by a security holder of the **Outside Entity** if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director**, **Officer**, the **Outside Entity** or the **Company**. It is further understood and agreed that this exclusion shall not apply to the solicitation, assistance, active participation or intervention by an **Insured Person** that has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Outside Entity** for at least two (2) years prior to the commencement of such **Claim**;

        (4)    is an **Employment Practices Claim**;

        (5)    is brought against a **Director** of the **Company** solely because such **Director** also serves in a capacity as a director of any entity which is a shareholder or investor of the **Company**, provided such **Claim**, in whole or in part, is made against such **Director** for **Wrongful Acts** in an **Insured Capacity** for the **Company**.

    provided, however, with respect to subparagraph (3) above, **Whistleblower Conduct** by an **Insured Person** as set forth in 18 U.S.C. 1514A, shall not be considered solicitation, assistance, active participation or intervention.

---

| **Costs of Defense** Coverage for **Claims** involving **Pollutants** |
|---|

1.    Section IV.I. of the Policy is deleted in its entirety.



*ExecPro*<sup>sm</sup>
Public Solution

# ELITE COVERAGE

2.    Section III. of the Policy is amended by the addition of the following:

"**Pollutants**" shall mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, including any materials to be recycled, reconditioned or reclaimed.

| Other Insurance Provisions |
|---|

1.    Section IV.K. of the Policy is deleted in its entirety.

2.    Section IX. of the Policy is amended by addition of the following:

**Other Insurance**

If any **Loss** is covered under this Policy and also covered in whole or in part by any other insurance policy(ies), then this Policy shall apply only as excess over, and shall not contribute with, any other valid and collectible policy or policies whether such other policy(ies) is/are stated to be primary, contributory, excess, contingent, or otherwise; provided, however, this Policy shall be primary over such other insurance coverage provided by:

(1)    any personal "umbrella" liability, independent directors' liability or other personal liability policy providing coverage to **Insured Persons** (and only to the extent coverage is otherwise provided to such **Insured Persons** under this Policy);

(2)    any policy(ies) that specifically state this Policy is providing underlying insurance thereto and that any coverage available pursuant to such other policy(ies) is specifically excess to the Limit of Liability provided by this Policy; and

(3)    any policy(ies) written on behalf of any entity shareholder of the **Company** which provides coverage to a **Director** or **Officer** of the **Company** who is an indemnifiable individual of such entity shareholder of the **Company**, without regard to any indemnification owed to such **Director** or **Officer** by the entity shareholder.

This Policy shall be specifically excess of, and shall not contribute with any insurance policy for pollution liability or environmental liability, including any general liability policy.



*ExecPro*<sup>sm</sup>
Public Solution

# ELITE COVERAGE

---

| Sub-Limits of Liability For UK Bribery Act Penalties and **Shareholder Derivative Demands** |
|---|

Section V. is amended by the addition of the following:

Sub-limit for UK Bribery Act Penalties Assessed Against **Insured Persons**

$ __100,000__ Sub-Limit of Liability for **Loss**, other than **Costs of Defense**, for civil penalties assessed against **Insured Persons** pursuant to Section 7 of the UK Bribery Act. This Sub-Limit is part of and not in addition to the aggregate Limit of Liability stated in Item 3. of the Declarations.

Sub-Limit for **Investigative Costs** for any **Shareholder Derivative Demand**

$ __500,000__ Sub-Limit of Liability for **Investigative Costs** for any **Shareholder Derivative Demand**. This Sub-Limit is part of and not in addition to the aggregate Limit of Liability stated in Item 3. of the Declarations.

| Amendment to Retention |
|---|

1.  Section VI. of the Policy is deleted and replaced with the following:

    **A.** One Retention shall apply to each and every **Claim**. The **Company** shall be responsible for, and shall hold the **Insurer** harmless from, any amount within the Retention. For purposes of application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. If, for any reason, including **Financial Insolvency**, the **Company** refuses or fails to advance, pay or indemnify the **Insured Persons** for **Loss** otherwise covered under the Policy, the **Insurer** shall advance such **Loss** incurred by the **Insured Persons** without first requiring payment of the Retention applicable to any **Claim** covered by Insuring Agreement I.B. Such advancement by the **Insurer** shall not relieve the **Company** from any duty it may have to indemnify **Insured Persons**. Any advancement of **Costs of Defense** to **Insured Persons** shall be made pursuant to the terms and conditions of Section VII.E. of the Policy. Any advancement of **Loss**, other than **Costs of Defense,** to **Insured Persons** shall be made within sixty (60) days of such request. The **Company** shall reimburse the **Insurer** for any **Loss** advanced up to the applicable retention amount in the event the **Company** wrongfully fails or refuses to indemnify any **Insured Persons**. Any amounts advanced by the **Insurer** shall be part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations.

---



*ExecPro*<sup>sm</sup>
Public Solution

# ELITE COVERAGE

B.     More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**. All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

C.     With respect solely to any **Securities Claim**, the Retention shall apply only to **Costs of Defense**.

In the event a **Claim** triggers more than one Retention, only the highest Retention shall apply. In no event, however, shall there be a Retention for either (1) any **Claim** under Insuring Agreement I.A. of the Policy unless such Retention is required pursuant to state law; or (2) any **Shareholder Derivative Demand** under Insuring Agreement I.D of the Policy.

Notwithstanding the foregoing, if and to the extent any covered **Loss** which is within any applicable Retention under this Policy is paid on behalf of the **Directors** and **Officers** by any other insurer pursuant to the terms and conditions of any Excess Difference in Conditions Side A policy which is specifically excess of this Policy, then such applicable Retention under this Policy shall be eroded by the amount of such payment(s).

| Settlement within Retention |
| --- |

Section VII.A. is deleted and replaced with the following:

A.     The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. The failure of any **Insured** to provide the **Insurer** with full cooperation and all information and particulars it may reasonably request shall not impair the rights of any other **Insured** under this Policy. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

Notwithstanding the foregoing, if a **Claim** can be resolved in which all **Loss**, including **Costs of Defense**, does not exceed the applicable Retention, then the **Insurer's** consent shall not be required, provided, however, the **Insureds** agree to notify the **Insurer** of the disposition and provide the **Insurer** with all information and particulars it may reasonably request about the **Claim** and its disposition as soon as practicable and in no event later than the expiration of this Policy.

**G**REAT**A**MERICAN®
INSURANCE GROUP

*ExecPro*™
Public Solution

# ELITE COVERAGE

| Sixty Day Advancement for Costs of Defense |
|---|

Section VII.E. of the Policy is deleted and replaced with the following:

E.    The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any covered **Claim**. Such advancement shall be within sixty (60) days after receipt of written evidence that **Costs of Defense** have been incurred. Any advancement shall be based on the following conditions:

   (1)    the appropriate Retention has been satisfied, provided, however, the requirement of satisfaction of the Retention shall not apply in the event of the **Financial Insolvency** of the **Company** or for any advancement of **Loss** for **Insured Persons** pursuant to Section VI.A. of the Policy;

   (2)    any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid; and

   (3)    in the event it is finally established by a final, non-appealable adjudication that the **Insurer** has no liability under the Policy for such **Claim**, the **Insureds** will severally, according to the relative benefits obtained from the **Costs of Defense** advanced, repay the **Insurer**, upon demand, all **Costs of Defense** advanced by virtue of this provision. In the event the **Insurer** recovers amounts it paid under this Policy, the **Insurer** will reinstate the Limit of Liability as set forth in Item 3. of the Declarations to the extent of such recovery, less costs incurred by the **Insurer** in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts it has paid under this Policy.

| Notice of Claim |
|---|

1.    Section VIII.A. of the Policy is deleted and replaced with the following:

   A.    (1)    The **Insureds** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim**, other than an **Inquiry**, which is made during the **Policy Period**. Such notice shall be given as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility first has knowledge of the **Claim**, but in no event later than ninety (90) days after the end of the **Policy Period**; or

*ExecPro*[sm]

Public Solution

**GREATAMERICAN**®
**INSURANCE GROUP**

# ELITE COVERAGE

(2)    If, during the **Policy Period**, the **Insureds** first become aware of an **Inquiry**, and if the **Insureds** give written notice to the **Insurer** as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility first has knowledge of the **Inquiry**, but in no event later than ninety (90) days after the end of the **Policy Period** of:

(i)    the entity conducting the **Inquiry**;

(ii)   the circumstances by which the **Insureds** first became aware of the **Inquiry**; and

(iii)  the particulars as to dates and persons involved

then the **Inquiry** shall be treated as a **Claim** under this Policy and the reasonable and necessary costs, charges, fees and expenses incurred by an **Insured Person** solely in connection with his or her preparation for and response to the **Inquiry** shall be covered, subject to all terms, conditions and limitations of this Policy.  Any other **Claim** which arises out of such **Inquiry** shall be deemed to have been first made at the time such written notice of the **Inquiry** was received by the **Insurer**.  However, if the **Insureds** elect not to report an **Inquiry**, then any subsequent **Claim** which arises out of the **Inquiry** shall be subject to the reporting requirements set forth in subparagraph A. (1) above, and coverage for such subsequent **Claim** will not be denied because of the **Insureds'** failure to report the **Inquiry** pursuant to this section of the Policy.

**Pro Rata Return of Premium for Cancellation**

Section IX.A. (1) is deleted and replaced with the following:

(1)    This Policy may be canceled by the **Corporation** at any time by written notice to the **Insurer**.  Upon cancellation, the **Insurer** shall retain the pro rata portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX. E. wherein the entire premium for this Policy shall be deemed earned.

**Amendment to Merger or Acquisition**

Section IX.D. of the Policy is deleted and replaced with the following:

**D.    Merger or Acquisition**

If, during the **Policy Period**, the **Company** acquires the assets of another entity, by merger or otherwise, and the acquired assets of such other entity exceed thirty-five percent (35%) of the assets of the **Corporation**, as of the most recently filed 10-K or 10-Q with the Securities and Exchange Commission, written notice thereof shall be given to the **Insurer** as soon as practicable, but in no event later than ninety (90) days from the effective date of the transaction, together with such information as the **Insurer** may request.  Premium adjustment and coverage revisions shall be effected as may be required by the **Insurer**.



*ExecPro*<sup>sm</sup>
Public Solution

## ELITE COVERAGE

If the **Company** fails to: (i) give written notice as required by this section within the time specified or (ii) pay the additional premium required by the **Insurer**, coverage for the acquired or created entity and its **Insured Persons** shall terminate with respect to any **Claim** first made more than ninety (90) days after such acquisition or creation. Coverage for any acquired or created entity described in this section and its **Insured Persons** shall be subject to such additional or different terms, conditions and limitations of coverage as the **Insurer** in its sole discretion may require.

---

**Amendment to Run-Off Coverage**

---

Section IX.E. is amended by the addition of the following:

In the event a transaction as described above occurs, the **Insureds** also shall have the right to request from the **Insurer** an extension of the coverage afforded by this Policy for an additional period of twelve (12) months to seventy-two (72) months after the end of the **Policy Period**, but solely with respect to any **Wrongful Act** committed or alleged to have been committed before the effective date of the transaction in question. Any such request must be made in writing and within ninety (90) days after the effective date of the transaction in question. The **Insurer** shall offer coverage based upon terms, conditions, exclusions and additional premium it deems appropriate and the **Insureds** agree to cooperate with the **Insurer** by submitting all information and particulars the **Insurer** may reasonably request.

---

**Subrogation and Right of Recovery**

---

Section IX.H. of the Policy is deleted and replaced with the following:

**H.    Subrogation and Right of Recovery**

In the event of payment of **Loss** under this Policy, the **Insurer** shall be subrogated to all the **Insureds'** rights of recovery. The **Company** and **Insured Persons** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**. In no event, however, shall the **Insurer** exercise its rights to subrogation against an **Insured Person** under this Policy unless the exclusion set forth in Section IV.A. of the Policy applies to such **Insured Person**.

In the event the **Insurer** shall for any reason pay indemnifiable **Loss** on behalf of an **Insured Person**, the **Insurer** shall have the contractual right hereunder to recover from the **Company** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Company** and shall be subrogated to the rights of the **Insured Persons** hereunder. The **Insurer** shall have the right to recover from the **Company** amounts the **Insurer** pays that are the result of any unsatisfied Retention arising from the failure of the **Company** to indemnify any **Insured Person** for **Loss** incurred by such **Insured Person**.

---





*ExecPro*<sup>sm</sup>
Public Solution

# ELITE COVERAGE

---

| Automatic Stay Provision |
|---|

Section IX. of the Policy is amended with the addition of the following:

**Bankruptcy of Insured**

The bankruptcy or insolvency of an **Insured** shall not relieve the **Insurer** of any of its obligations under the Policy. With respect to any coverage available under the Policy, the **Insurer** agrees to cooperate with the **Insureds** in the event the **Insureds**, on behalf of any **Insured Persons**, seek relief from any stay or injunction entered in such bankruptcy or insolvency proceeding.

| Supplemental Coverage for UK Corporate Manslaughter Act Investigation Costs |
|---|

Section IX. of the Policy is amended by the addition of the following:

**Supplemental Coverage for UK Corporate Manslaughter Act Investigation Costs**

If requested by an **Insured Person** and consented to in writing by the **Insurer**, provided such consent shall not be unreasonably withheld, the **Insurer** shall pay on behalf of or reimburse an **Insured Person** for reasonable and necessary costs and expenses that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against the **Company** for any actual or alleged violations of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction, provided, however, such costs and expenses shall not include any salary, wages, overhead or benefit expenses associated with such **Insured Person**. Any payment pursuant to this supplemental coverage shall be considered **Loss** for purposes of the exhaustion of the Limit of Liability and shall be subject to the Retention stated for Each **Claim** other than a **Securities Claim** or **Employment Practices Claim** for Insuring Agreements B and/or C in Item 4 of the Declarations. In the event the **Insured Person** is not indemnified by the **Company** for any reason, the **Insurer** shall advance payment hereunder without requiring payment of the Retention.

| Elite Coverage Endorsement Inconsistency |
|---|

Section IX. of the Policy is amended by the addition of the following:

**Elite Coverage Endorsement Inconsistency**

In the event of an inconsistency between this endorsement and any other endorsement attached to this Policy, the **Insurer**, as permitted by law, shall apply those terms and conditions which are more favorable to the **Insureds**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*<sup>sm</sup>
Public Solution



# AMENDMENT TO SECTION IX.
# GENERAL CONDITIONS

It is understood and agreed that Section IX._B._ of the Policy is hereby deleted and replaced with the following:

Section IX._B._  Proposal Form

It is agreed by the **Company** and the **Insured Persons** that the particulars and statements contained in the Proposal Form(s), any information provided therewith, any public documents filed by the **Company** on the SEC's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") within the twelve (12) month period prior to the inception date of this Policy, the most recent Form 10k filed and the most recent annual report (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated in and constituting a part of the Policy.  It is further understood and agreed by the **Company** and the **Directors and Officers** that the statements in the Proposal Form(s) or in any information provided therewith are their representations, and that this Policy is issued in reliance upon the truth of such representations.  In the event any of the statements, representations or information in the Proposal Form(s) and/or any information provided therewith (hereafter referred to as "Facts"), are not true and accurate:

(A)    There shall be no coverage for any **Claims** made pursuant to Insuring Agreement A. of this Policy with respect to any **Insured Person** who had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s). The knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining coverage under Insuring Agreement A.; and

(B)    There shall be no coverage for any **Claims** made pursuant to Insuring Agreement B. of this Policy to the extent the **Company** indemnifies any **Insured Person** who had knowledge, as of the effective date of this **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s).  For purposes of this paragraph (B), knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**; and

---

Insured:  APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:  9/1/2018 to Policy Expiration                Policy Number:  DOL3664294

Countersigned by:  _____        Endorsement Effective Date:  9/1/2018
                         *Authorized Representative*



*ExecPro*<sup>sm</sup>
Public Solution

# AMENDMENT TO SECTION IX.
## GENERAL CONDITIONS

(C)    There shall be no coverage for any **Claims** made pursuant to Insuring Agreement C. of this Policy if the person(s) who signed the Proposal Form(s) for this coverage or any **Insured Person** who is or was a past, or present chief financial officer, or chief executive officer of the **Company** had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s); and

(D)    This Policy shall not be rescinded by the **Insurer**.

The terms and conditions contained in this Endorsement supersede any inconsistent terms and conditions contained in the Proposal Form.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

*ExecPro*sm
Public Solution

GREAT**AMERICAN**®
INSURANCE GROUP

## SPECIFIED OUTSIDE ENTITY(IES) COVERAGE
## With Specified Insured Persons

It is understood and agreed that Section III.M. of the Policy is hereby amended to include the following:

Specified **Insured Persons**                    Specified **Outside Entity(ies)**

Edward Cameron                              ARCA Advanced Processing, LLC
Brian Connors                               ARCA Advanced Processing, LLC

It is further understood and agreed that, for purposes of coverage provided by this endorsement, Section IX.F. of the Policy is amended by the addition of the following:

1.    Coverage for the above specified **Insured Persons** arising out of their service as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of the above specified **Outside Entity(ies)** is only available to the extent that such **Insured Persons** are legally entitled to indemnification by the **Company** as of the date of the alleged **Wrongful Act.**

2.    In the event a **Claim** is made against the above specified **Insured Persons** arising out of their service as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of the above specified **Outside Entity(ies)**, the **Insurer** shall not be liable to make any payment for **Loss** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the above specified **Outside Entity(ies)** and/or the above specified **Insured Persons** serving as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of the above specified **Outside Entity(ies)** as of _04/01/2014_ , or any fact, circumstance or situation underlying or alleged in such proceeding.

Insured:  APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:  9/1/2018 to Policy Expiration                    Policy Number:  DOL3664294

Countersigned by: _____                    Endorsement Effective Date:  9/1/2018
              *Authorized Representative*



*ExecPro*<sup>sm</sup>
Public Solution

## SPECIFIED OUTSIDE ENTITY(IES) COVERAGE
## With Specified Insured Persons

3.  In the event Great American Insurance Group provides Directors' and Officers' Liability Insurance, Directors', Officers', Insured Entity and Employment Practices Liability Insurance, or any similar type of coverage for the above specified **Outside Entity(ies)** or would be provided but for the failure to submit a notice of a claim, then the maximum aggregate Limit of Liability (which is part of and not in addition to the Limit of Liability as stated in Item 3 of the Declarations) shall be reduced by the limit of liability as set forth on the Declarations Page of such other Directors' and Officers' Liability Insurance, Directors', Officers', Insured Entity and Employment Practices Liability Insurance or any similar type of coverage as provided by Great American Insurance Group.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



# TERRORISM COVERAGE ENDORSEMENT
## CAP ON LOSS FROM CERTIFIED ACTS

Subject to all terms and conditions of this Policy, including any follow-form provisions, this Policy is amended by the addition of the following:

**CERTIFIED ACTS OF TERRORISM COVERAGE**

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1.    the act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.    the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year in the aggregate and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rate allocation in accordance with procedures established by the Secretary of the Treasury.

---

It is understood and agreed that the Premium section of the Declarations is amended by the addition of the following:

Terrorism Premium:  $  0.00

The Policyholder Disclosure Offer of Terrorism Coverage is attached to and is to be considered as incorporated in and constituting a part of this Policy.

---

*This coverage shall not apply to any commercial crime or errors & omissions coverages that may be included in this policy.*

This endorsement does not extend any additional coverage or otherwise change the terms and conditions of any coverage under this Policy.

---

Insured:   APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:   9/1/2018 to Policy Expiration                    Policy Number:  DOL3664294

Countersigned by: _____          Endorsement Effective Date:  9/1/2018
                                       *Authorized Representative*

---

**GREAT AMERICAN**®
INSURANCE GROUP

# ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

Insured:   APPLIANCE RECYCLING CENTERS OF AMERICA INC.

Policy Period:   9/1/2018 to Policy Expiration                Policy Number:   DOL3664294

Countersigned by: _____                Endorsement Effective Date:   9/1/2018
                        *Authorized Representative*

IL 73 24  (Ed. 08/12)                              Endorsement:   7                    Page 1 of 1

**GREAT**AMERICAN®
INSURANCE GROUP

# POLICYHOLDER DISCLOSURE
# OFFER OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is dependent upon the calendar year and is shown in the Table below.

| Year | Federal Share |
|------|---------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 | 80% |

The Terrorism Risk Insurance Act, as amended in 2015, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism. The policy's other provisions will still apply to such an act.

*This coverage shall not apply to any commercial crime coverage that may be included in this policy.*

**Terrorism coverage** for acts of terrorism that are certified under the federal program as an act of terrorism is included for no additional premium. Nonetheless, if you would like to reject such Terrorism coverage, please provide Great American written confirmation of such, and an exclusion will be attached to your policy.



*ExecPro*®

Public Solution

# *ExecPro*®

## Public Solution Insurance Policy

Great American Insurance Group - Executive Liability Division
Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

# Table of Contents

| | | |
|---|---|---|
| I. | Insuring Agreements | Page 1 |
| II. | Discovery Period | Page 1 |
| III. | Definitions | Page 2 |
| IV. | Exclusions | Page 5 |
| V. | Limit of Liability | Page 8 |
| VI. | Retention | Page 8 |
| VII. | Costs of Defense and Settlements | Page 8 |
| VIII. | Notice of Claim | Page 9 |
| IX. | General Conditions | Page 10 |
| | (A) Cancellation or Non-Renewal | Page 10 |
| | (B) Proposal Form | Page 10 |
| | (C) Action Against the Insurer | Page 11 |
| | (D) Merger or Acquisition | Page 11 |
| | (E) Conversion to Run-Off Coverage | Page 11 |
| | (F) Outside Entity Provision | Page 12 |
| | (G) Coverage Extensions | Page 12 |
| | (H) Subrogation | Page 12 |
| | (I) Order of Payments | Page 12 |
| | (J) Assignment | Page 13 |
| | (K) Conformity to Statute | Page 13 |
| | (L) Entire Agreement | Page 13 |
| | (M) Corporation Represents Insured | Page 13 |
| | (N) Representative of the Insurer | Page 13 |
| | (O) State Amendatory Inconsistency | Page 13 |

## GREAT AMERICAN INSURANCE GROUP®

Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

## THIS IS A CLAIMS MADE POLICY.  READ IT CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (a stock insurance company, hereinafter called the **Insurer**), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the **Insured** and **Insurer** agree:

### Section I. Insuring Agreements

A.    The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

B.    The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.

C.    The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured Entity** shall be legally obligated to pay as a result of a **Securities Claim** first made against the **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

### Section II. Discovery Period

A.    In the event the **Insurer** refuses to renew this Policy or the **Corporation** chooses to cancel or not renew this Policy, the **Corporation** shall have the right, upon payment of fifty percent (50%) of the annual premium, (or if the **Policy Period** is other than annual, fifty percent (50%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**. This twelve (12) month period shall be referred to in this Policy as the **Discovery Period**.

B.    As a condition precedent to the right to purchase the **Discovery Period**, the total premium for this Policy must have been paid, and a written request together with payment of the appropriate premium for the **Discovery Period** must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period.**

C.    The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the **Discovery Period** shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations.  For purposes of the Limit of Liability, the **Discovery Period** is considered to be part of, and not in addition to, the **Policy Period**.

**Section III. Definitions**

A.    "**Claim**" shall mean:

    (1)    a written demand for monetary or non-monetary relief made against any **Insured** and reported to the **Insurer** pursuant to Section VIII.A.;

    (2)    a civil, criminal, administrative, arbitration, or regulatory proceeding, or any appeal therefrom, made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before any federal human rights commission or any similar governmental body (including but not limited to the Equal Employment Opportunity Commission);

    (3)    a written request to enter into an agreement to toll any applicable statute of limitation prior to the commencement of any judicial, administrative, regulatory or arbitration proceeding; or

    (4)    a civil, criminal, administrative or regulatory investigation (including a Securities and Exchange Commission, Equal Employment Opportunity Commission or grand jury investigation) of any **Insured Person** commencing:

        (a)    with the service of a subpoena upon such **Insured Person** in the case of an investigation by the Securities and Exchange Commission or a similar state or foreign government authority, receipt of a Wells Notice, receipt of a target letter or receipt of a formal order of investigation upon such **Insured Person**; or

        (b)    on the date such **Insured Person** is identified in writing by the investigating authority, other than as stated in Section A.(4)(a) above, as a person against whom a proceeding described in Section A.(2) above may be commenced.

    However as respects this Section A.(4), **Claim** shall not include a civil, criminal, administrative or regulatory investigation of the **Company**.

B.    "**Company**" shall mean:

    (1)    the **Corporation**;

    (2)    any **Subsidiary**; and

    (3)    in the event of **Financial Insolvency**, the resulting debtor-in-possession (or foreign equivalent status), if any.

C.    "**Corporation**" shall mean the entity named in Item 1 of the Declarations.

D.    "**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation or defense of any **Claim** including the costs of an appeal bond, attachment bond or similar bond (but without obligation on the part of the **Insurer** to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with any **Insured Persons**.

E.    "**Directors**" and "**Officers**" shall mean all persons who were, now are, or shall be directors and/or officers of the **Company**. In the event the **Company** is duly chartered as a Limited Liability Company with a provision in its bylaws that the managers of such Limited Liability Company shall be indemnified to the fullest extent permitted by applicable law, the terms "**Directors**" and "**Officers**" shall include individuals who serve as managers of such Limited Liability Companies.

F.    "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future employee of the **Company** or **Outside Entity**, or any applicant for employment with the **Company** or **Outside Entity** alleging an **Employment Practices Wrongful Act**.

G.    "**Employment Practices Wrongful Act**" shall mean any of the following acts related to employment:

(1)    wrongful dismissal, discharge or termination of employment, whether actual or constructive;
(2)    misrepresentation;
(3)    violation of employment laws;
(4)    sexual or workplace harassment;
(5)    discrimination;
(6)    wrongful failure to employ or promote;
(7)    wrongful discipline;
(8)    wrongful deprivation of career opportunity including a wrongful failure to hire or promote;
(9)    failure to grant tenure;
(10)    negligent employee evaluation;
(11)    retaliation;
(12)    failure to provide adequate workplace or employment policies or procedures;
(13)    defamation (including libel and slander);
(14)    invasion of privacy;
(15)    wrongful demotion;
(16)    negligent reassignment;
(17)    violation of any federal, state or local civil rights laws;
(18)    negligent hiring;
(19)    negligent supervision;
(20)    negligent training;
(21)    negligent retention; or
(22)    acts described in (1) through (21) above, arising from the use of the **Company's** internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Company's** internet, e-mail, telecommunication or similar systems.

H.    "**Financial Insolvency**" shall mean the **Company** becoming a debtor-in-possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official to control, supervise, manage or liquidate the **Company**.

I.    "**Insured(s)**" shall mean the **Insured Entity** and all **Insured Persons**.

J.    "**Insured Entity**" shall mean the **Company**, but only with respect to coverage provided under Insuring Agreement I.C.

K.    "**Insured Persons**" shall mean **Directors** and **Officers** and all past, present and future employees of the **Company** other than **Directors** and **Officers**.

L.    "**Loss**" shall mean settlements and judgments, pre-judgment and/or post-judgment interest, compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award and **Costs of Defense**, provided, however, **Loss** shall not include:

(1)    criminal or civil fines or penalties imposed by law, or taxes;

(2)    any matter which may be deemed uninsurable under the law pursuant to which this Policy is construed; or

(3)    any portion of damages, judgment or settlements arising out of any **Claim** alleging the **Company** paid an inadequate price or consideration for the purchase of any securities but solely with respect to coverage provided under Insuring Agreements I.B. and I.C.

Notwithstanding sub-paragraph (2) above, in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, the **Insurer** shall not assert the portion of any amounts incurred by any **Insureds** attributable to such violations constitutes uninsurable loss and shall treat that portion of all settlements, judgments and **Costs of Defense** as constituting **Loss** under the Policy.

It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

**M.**  "**Outside Entity**" shall mean any non-profit and/or eleemosynary organizations.

**N.**  "**Policy Period**" shall mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in Item 2 of the Declarations, or its earlier termination if applicable.

**O.**  "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

**P.**  "**Securities Claim**" shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law, which is:

(1)  brought by any person or entity arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

(2)  brought by a security holder of the **Company**, with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action, or derivatively on behalf of the **Company**.

"**Securities Claim**" shall also include an administrative or regulatory proceeding alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law against the **Company**, but only if and only during the time that such proceeding is also continuously maintained against an **Insured Person**.

**Q.**  "**Subsidiary**" shall mean:

(1)  any entity in which the **Corporation** owns, directly or indirectly, more than fifty percent (50%) of the voting stock on or before the inception date of the Policy;

(2)  any limited liability company in which the **Corporation** owns or controls, directly or indirectly, the right to elect, appoint or designate more than fifty percent (50%) of such entity's managers on or before the inception date of the Policy;

(3)  any Joint Venture, in which the **Corporation,** on or before the inception date of the Policy, directly or indirectly:

(a)  owns interests representing more than fifty (50%) of the voting, appointment, or designation power for the selection of the management committee members of the Joint Venture; or

(b)  has the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the Joint Venture to elect, appoint or designate a majority of the management committee of the Joint Venture;

(4)     any entity defined above and created or acquired by the **Corporation** after the inception date of this Policy, if the entity's total assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Corporation** as of the inception date of this Policy; or

(5)     any entity created or acquired by the **Corporation,** after the inception date of this Policy, other than described in (4) above, if the **Corporation**, within ninety (90) days provides the **Insurer** with written notice thereof and agrees to any premium adjustment and/or coverage revision that may be required by the **Insurer.**

R.      "**Wrongful Act**" shall mean:

(1)     any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by any **Insured Persons** in their capacity with the **Company**;

(2)     any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Insured Entity**, but only with respect to Insuring Agreement I.C.;

(3)     any matter claimed against any **Insured Persons** solely by reason of their status with the **Company**; or

(4)     any matter claimed against any **Insured Persons** arising out of their service as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an **Outside Entity**, but only if such service is at the request of the **Company**.

## Section IV. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.      brought about or contributed to by:

(1)     any **Insureds** gaining any profit, advantage or remuneration to which they were not legally entitled.  However, this exclusion shall not apply to that portion of **Loss** from a **Securities Claim** attributable to an alleged violation of Section 11 or 12 of the Securities Act of 1933, as amended; or

(2)     the deliberately fraudulent or criminal acts of any **Insureds**;

provided, however, this exclusion shall not apply unless it is finally adjudicated that such conduct in fact occurred.  This exclusion shall not apply to coverage provided under Insuring Agreement I.B.;

B.      based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

C.      based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any civil, criminal, administrative or investigative proceeding involving the **Company** and/or any **Insured Persons** pending as of or prior to the date stated in Item 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

D.    for any actual or alleged:

    (1)    bodily injury, sickness, disease, or death of any person;

    (2)    damage to or destruction of any tangible property or the loss of use thereof; or

    (3)    mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander;

provided, however, part (3) of this exclusion shall not apply to any **Employment Practices Claim**;

E.    for any violations of the Employee Retirement Income Security Act of 1974 or any amendments thereto or any similar provisions of state statutory, common or foreign law;

F.    for any **Wrongful Act** of any **Insured Persons** in their respective capacity as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an entity other than the **Company** or **Outside Entity**, even if directed or requested to serve such other entity;

G.    for any **Wrongful Act** of any **Insured Persons** serving as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position thereof; provided, however, this exclusion shall not apply to any **Employment Practices Claim**;

H.    by or on behalf of the **Company**, or any security holder of the **Company**, or any **Directors** or **Officers**, provided, however, this exclusion shall not apply to:

    (1)    any **Employment Practices Claim**;

    (2)    any **Claim** brought by any **Directors** or **Officers** where such **Claim** is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of this Policy;

    (3)    any **Claim** brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner, creditors' committee (or any assignee thereof) or similar official of the **Company**, if any, in the event of **Financial Insolvency**;

    (4)    any **Claim** brought by any former **Directors** or **Officers** who have not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Company** for at least three (3) years prior to the commencement of such **Claim**, if the former **Directors** or **Officers** bringing such **Claim** are acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Directors** or **Officers** or the **Company**;

    (5)    any **Claim** brought by any **Directors** or **Officers** where such **Claim** is brought and maintained:

        (a)    solely and entirely in a jurisdiction other than the United States of America, its territories and possessions; and

        (b)    subject to the substantive and procedural laws of a jurisdiction other than the United States of America, its territories and possessions; or

(6)    any **Claim** brought by any security holder of the **Company** whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company**. For the purposes of this Section IV.H.(6), where one or more security holders allege, certify or affirm there is likely support for their **Claim** by referring to any of the following actions taken by a **Director** or **Officer**, such allegations, certification or affirmation shall not, in itself, demonstrate such security holder is not "acting totally independent of, and without solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company**":

(a)    providing information to, causing information to be provided to, or otherwise assisting in an investigation conducted by a federal regulatory agency, a federal law enforcement agency, or any member or committee of the United States Congress regarding the possible violation by the **Company** or any **Director** or **Officer** of the law, rules, or regulations listed in 18 U.S.C. 1514A(a)(1) or any similar whistleblower protection provision;

(b)    filing, causing to be filed, testifying, participating in, or otherwise assisting in a proceeding relating to the possible violation by the **Company** or any **Director** or **Officer** of law, rules, or regulations listed in 18 U.S.C. 1514A(a)(2) or any similar whistleblower protection provision;

(c)    filing a complaint with the United States Secretary of Labor, as authorized by 18 U.S.C. 1514A(b)(1)(A) or any similar whistleblower protection provision; or

(d)    bringing an action at law or equity to the extent that such action seeks relief pursuant to 18 U.S.C. 1514A(b)(1)(B) or any similar whistleblower protection provision.

**I.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, provided, however, that this exclusion shall not apply to: (1) any **Securities Claim**, or (2) any coverage provided under Insuring Agreement I.A.

**J.**    for any **Wrongful Act** of any **Subsidiary** or the **Insured Persons** of such **Subsidiary** or any entity that merges with the **Company** or the **Insured Persons** of such entity that merges with the **Company** occurring:

(1)    prior to the date such entity became a **Subsidiary** or was merged with the **Company**;

(2)    subsequent to the date such entity became a **Subsidiary** or was merged with the **Company** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or was merged with the **Company**, would constitute **Related Wrongful Acts**; or

(3)    subsequent to the date such entity ceased to meet the definition of **Subsidiary**.

**K.**    which is insured in whole or in part by any other valid and collectible policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent, or otherwise.

With respect to Section IV. of the Policy, no fact pertaining to or conduct by any **Insured Person** shall be imputed to any other **Insured Person**; and only facts pertaining to or conduct by any past, present or future chief executive officer, or chief financial officer of the **Corporation** shall be imputed to the **Insured Entity** to determine if coverage is available.

**Section V. Limit of Liability**

**A.**    The **Insurer** shall be liable to pay one hundred percent (100%) of **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

**B.**    **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in Item 3 of the Declarations, and such **Costs of Defense** shall serve to reduce the Limit of Liability.

**C.**    The **Insurer's** liability for all **Loss** shall be the amount shown in Item 3 of the Declarations which shall be the maximum aggregate Limit of Liability of the **Insurer** for the **Policy Period**, regardless of the time of payment or the number of **Claims**.

**Section VI. Retention**

**A.**    One Retention shall apply to each and every **Claim**. The **Company** shall be responsible for, and shall hold the **Insurer** harmless from, any amount within the Retention. For the purposes of the application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. In the event the **Company** is unable to indemnify the **Insured Persons** solely by reason of its **Financial Insolvency**, the **Insurer** shall, pursuant to the terms and conditions of Section VII.E., advance **Costs of Defense** incurred by the **Insured Persons** without first requiring payment of the Retention applicable to **Claims** covered by Insuring Agreement I.B. The certificate of incorporation, charter or other organizational documents of the **Company**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** to the **Insured Persons** to the fullest extent permitted by law.

**B.**    More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**. All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

In the event a **Claim** triggers more than one Retention, only the highest Retention shall apply. In no event however shall there be a Retention for any **Claim** brought under Insuring Agreement I.A. of the Policy unless such Retention is required pursuant to State Law.

**C.**    With respect solely to any **Securities Claim**, the Retention shall apply only to **Costs of Defense.**

**Section VII. Costs of Defense and Settlements**

**A.**    The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

**B.**    The **Insureds**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insureds** shall only retain counsel as is mutually agreed upon with the **Insurer**.

**C.**    The **Insurer** shall at all times have the right, but not the duty, to associate with the **Insureds** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply.

D.    If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insured** and the **Insurer** recognize there must be an allocation between insured and uninsured **Loss**.  The **Insureds** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between insured and uninsured **Loss**.

E.    The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any covered **Claim.** Such advancement shall be within ninety (90) days after receipt of written evidence that **Costs of Defense** have been incurred.  Any advancement shall be based on the following conditions:

(1)    the appropriate Retention has been satisfied, provided, however, the requirement of satisfaction of the Retention shall not apply in the event of the **Financial Insolvency** of the **Company**;

(2)    any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

(3)    the **Company** and **Insured Persons** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insureds** provided, however, if there is no agreement on an allocation of **Loss**, the **Insurer** shall advance **Costs of Defense** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated, or judicially determined; and

(4)    in the event it is finally established that the **Insurer** has no liability under the Policy for such **Claim**, the **Insureds** will severally, according to the relative benefits obtained from the **Costs of Defense** advanced**,** repay the **Insurer**, upon demand, all **Costs of Defense** advanced by virtue of this provision.


**Section VIII. Notice of Claim**

A.    The **Insureds** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim** which is made during the **Policy Period**.  Such notice shall be given as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility first has knowledge of the **Claim**, but in no event later than ninety (90) days after the end of the **Policy Period**.

B.    If, during the **Policy Period** or **Discovery Period**, any **Insured** first becomes aware of a specific **Wrongful Act** and gives notice to the **Insurer** of:

(1)    the specific **Wrongful Act**;

(2)    the injury or damage which has or may result therefrom; and

(3)    the circumstances by which the **Insured** first became aware thereof;

then any **Claim** arising out of such **Wrongful Act** which is subsequently made against the **Insured** shall be deemed to have been made at the time the **Insurer** received such written notice from the **Insured**.

C.    In addition to furnishing the notice as provided in Sections VIII.A. or B. the **Insureds** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

**D.**  Notice to the **Insurer** as provided in Sections VIII.A. or B. shall be emailed to ELDClaims@gaig.com or mailed to:

> **GREAT AMERICAN INSURANCE GROUP**
> **EXECUTIVE LIABILITY DIVISION**
> **CLAIMS DEPARTMENT**
> **P.O. BOX 66943 CHICAGO, IL 60666**.

## Section IX. General Conditions

**A.**  **Cancellation or Non-Renewal**

(1)  This Policy may be canceled by the **Corporation** at any time by written notice to the **Insurer**.  Upon cancellation, the **Insurer** shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX. E. wherein the entire premium for this Policy shall be deemed earned.

(2)  This Policy may only be canceled by the **Insurer** if the **Corporation** does not pay the premium when due.

(3)  If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Corporation** with no less than sixty (60) days advance notice thereof.

**B.**  **Proposal Form**

It is agreed by the **Company** and the **Insured Persons** that the particulars and statements contained in the Proposal Form(s), any information provided therewith, any public documents filed by the **Company** with the Securities and Exchange Commission within the twelve (12) month period prior to the inception date of this Policy, the most recent Form 10k filed and the most recent annual report (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated in and constituting a part of the Policy.  It is further understood and agreed by the **Company** and the **Directors** and **Officers** that the statements in the Proposal Form(s) or in any information provided therewith are their representations, and this Policy is issued in reliance upon the truth of such representations.  In the event any of the statements, representations or information in the Proposal Form(s) and/or any information provided therewith (hereafter referred to as "Facts"), are not true and accurate:

(1)  there shall be no coverage for any **Claims** made pursuant to Insuring Agreement I. A. of this Policy with respect to any **Insured Person** who had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s).  The knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining coverage under Insuring Agreement I. A.;

(2)  there shall be no coverage for any **Claims** made pursuant to Insuring Agreement I. B. of this Policy to the extent the **Company** indemnifies any **Insured Person** who had knowledge, as of the effective date of this **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s).  For purposes of this paragraph, knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**;

(3)     there shall be no coverage for any **Claims** made pursuant to Insuring Agreement I. C. of this Policy if the person(s) who signed the Proposal Form(s) for this coverage or any **Insured Person** who is or was a past, present or future chief financial officer, or chief executive officer of the **Corporation** had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s); and

(4)     coverage provided pursuant to Insuring Agreement I. A. of this Policy shall not be rescinded by the **Insurer**.

**C.     Action Against the Insurer**

(1)     No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insured's** obligation to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured**, claimant and the **Insurer**.

(2)     No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insureds** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

**D.     Merger or Acquisition**

If, during the **Policy Period**, the **Company** acquires the assets of another entity, by merger or otherwise, and the acquired assets of such other entity exceed twenty-five percent (25%) of the assets of the **Company** as of the inception date of the Policy, written notice thereof shall be given to the **Insurer** as soon as practicable, but in no event later than ninety (90) days from the effective date of the transaction, together with such information as the **Insurer** may request. Premium adjustment and coverage revisions shall be effected as may be required by the **Insurer**.

**E.     Conversion to Run-Off Coverage**

If, during the **Policy Period**, a transaction occurs wherein another entity gains control of the **Corporation** through the ownership of more than fifty percent (50%) of the voting stock of the **Corporation**, or the **Corporation** merges into another entity or consolidates with another entity such that the **Corporation** is not the surviving entity, or the **Corporation** sells all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert then:

(1)     the **Corporation** must give written notice of such transaction to the **Insurer** within ninety (90) days after the effective date of such transaction and provide the **Insurer** with such information in connection therewith as the **Insurer** may deem necessary;

(2)     this Policy shall only apply to **Wrongful Acts** actually or allegedly committed on or before the effective date of such transaction; and

(3)     the entire premium for this Policy shall be deemed earned as of the date of such transaction.

**F.    Outside Entity Provision**

In the event a **Claim** is made against any **Insured Persons** arising out of their service as director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an **Outside Entity**, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, officers, trustees, regents, governors, members of the Board of Managers, or equivalent positions.

**G.    Coverage Extensions**

(1)    Spousal Provision
The coverage provided by this Policy shall also apply to the lawful spouse or "Domestic Partner" of an **Insured Person**, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.   The term "Domestic Partner" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

(2)    Worldwide Provision
The coverage provided under this Policy shall apply worldwide.   The term **Directors** and **Officers** is deemed to include individuals who serve in equivalent positions in foreign **Subsidiaries**.

(3)    Estates and Legal Representatives
The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives, or assigns of any **Insured Persons** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Persons**.

**H.    Subrogation**

In the event of payment under this Policy, the **Insurer** shall be subrogated to all the **Insureds'** rights of recovery.   The **Company** and **Insured Persons** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**.   In no event, however, shall the **Insurer** exercise its rights to subrogation against an **Insured Person** under this Policy unless, such **Insured Person**:

(1)    has been convicted of a deliberate criminal act;

(2)    has been determined by a final adjudication adverse to the **Insured Person** to have committed a deliberate fraudulent act, or to have obtained any profit, advantage or remuneration to which such **Insured Person** was not legally entitled.

In the event the **Insurer** shall for any reason pay indemnifiable **Loss** on behalf of an **Insured Person**, the **Insurer** shall have the contractual right hereunder to recover from the **Company** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Company** and shall be subrogated to rights of the **Insured Persons** hereunder.

**I.    Order of Payments**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Policy, the **Insurer** shall first, pay **Loss** for which coverage is provided under Insuring Agreement I.A. of this Policy; and thereafter with respect to whatever remaining amount of the Limit of Liability is available after such payment, pay such other **Loss** for which coverage is provided under any other applicable Insuring Agreements in Section I of this Policy.

**J.     Assignment**

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**K.     Conformity to Statute**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**L.     Entire Agreement**

By acceptance of this Policy, the **Insureds** and the **Insurer** agree that this Policy (including the Declarations, Proposal Forms submitted to the **Insurer** and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.  The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**M.     Corporation Represents Insured**

By acceptance of this Policy, the **Corporation** shall be designated to act on behalf of the **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.     Representative of the Insurer**

Great American Insurance Group, Executive Liability Division, P.O. Box 66943, Chicago, Illinois 60666 shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of **Claims** shall be given pursuant to Section VIII. of the Policy.

**O.     State Amendatory Inconsistency**

It is hereby understood and agreed that, in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, the **Insurer** shall apply those terms and conditions which are more favorable to the **Insureds** if permitted by law and the public policy of the state of domicile of the **Corporation.**

In witness whereof the **Insurer** has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the **Insurer.**

**GREAT AMERICAN INSURANCE COMPANY®**

*President*                                              *Secretary*