1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JANONE INC. f/k/a APPLIANCE
RECYCLING CENTERS OF AMERICA, INC.,

                  Plaintiff(s),

     v.

GREAT AMERICAN INSURANCE
COMPANY and ENDURANCE AMERICAN
INSURANCE COMPANY,

                  Defendant(s).

Case No. 2:21-CV-1554 JCM (NJK)

ORDER

Presently before the court is defendant Great American Insurance Company's motion for summary judgment. (ECF No. 32). Plaintiff JanOne, Inc. filed a response (ECF No. 49), to which defendant replied (ECF No. 50).

Also before the court is plaintiff's motion for partial summary judgment. (ECF No. 36). Defendant filed a response (ECF No. 50), to which plaintiff replied (ECF No. 52).

**I.**     **Background**

This is an insurance dispute arising out of an underlying securities case. There is no genuine dispute as to the following material facts.

Plaintiff is a company involved in an allegedly fraudulent stock transaction with another company, Live Ventures, Inc. Defendant was plaintiff's insurer and had issued a policy effective September 1, 2018, to June 1, 2019, that covered losses incurred as a result of several different categories of legal claims against the company including, as relevant here, securities claims. (ECF Nos. 1-1; 39)

1        In December 2017, the SEC began investigating Live Ventures for several violations of

2  securities law.  (ECF No. 32-2).  As that investigation went on, the SEC began to probe the

3  transaction between Live Ventures and JanOne, and it subpoenaed individuals to testify,

4  including Tim Matula.  (ECF Nos. 32-3; 32-5).  Matula held a dual role.  He had been both the

5  "Head of Investor Relations" for Live Ventures and a director of JanOne, then known as

6  Appliance Recycling Centers of America.  (ECF Nos. 38 at 5; 41 at 2–3).  All correspondence he

7  received from the SEC referred to the investigation into Live Ventures, however, and did not

8  mention JanOne under either of its names.  (ECF Nos. 32-3; 32-5).

9        Initially, the SEC sent Matula an email on May 22, 2019, notifying him that he would

10  soon be subpoenaed.  (ECF No. 32-3).  One week later, on May 29, defendant received notice of

11  that potential inquiry—three days before expiration of the policy.  (ECF No. 32-4).  The SEC

12  issued the subpoena itself one week later, on June 5, 2019.  (ECF No. 32-5).  Later that same

13  week, defendant acknowledged it had received notice and reserved its rights to determine the

14  scope of coverage.  (ECF No. 32-6).  Finally, two months later, on August 15, 2019, it advised

15  plaintiff that it would need to review the eventual transcript of Matula's deposition to determine

16  if it related to his JanOne employment or his Live Ventures employment.  (ECF No. 32-7).

17        However, the next day, August 16, 2019, the SEC informed Matula that it would not be

18  proceeding with his deposition.  (ECF No. 32-8).  He never testified, and he never provided

19  documents.  However, the SEC went on to subpoena other JanOne employees, including Mark

20  Szafranowski and Virland Johnson, and it eventually issued Wells Notices to JanOne itself and

21  to Johnson.  *See* (ECF Nos. 32-14; 32-15; 32-19; 32-20).

22        Plaintiff eventually tendered the Wells Notices to defendant for coverage.  (ECF No. 32-

23  21).  Defendant denied coverage of those Wells Notices, reasoning that they had not arisen out of

24  the Matula inquiry.  (ECF No. 32-22).

25        As a result, plaintiff brought this lawsuit seeking coverage for its costs related to the

26  investigation, which it contends began with the email to Matula in May 2019.  (ECF No. 1).

27  Defendant, on the other hand, asserts that there was never an "inquiry" under the policy because

28  there is no evidence that the SEC sought to depose Matula in his capacity as a JanOne employee,

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    and thus an "insured person."  The parties now both move for summary judgment.  (ECF Nos.

2    32; 36).

3    **II.      Legal Standard**

4         The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6    any, show that "there is no genuine dispute as to any material fact and the movant is entitled to

7    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment

8    is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477

9    U.S. 317, 323–24 (1986).

10        For purposes of summary judgment, disputed factual issues should be construed in favor

11   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to

12   be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

13   showing that there is a genuine issue for trial."  *Id.*

14        In determining summary judgment, the court applies a burden-shifting analysis.  "When

15   the party moving for summary judgment would bear the burden of proof at trial, it must come

16   forward with evidence which would entitle it to a directed verdict if the evidence went

17   uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

18   (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of

19   establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*

20        By contrast, when the non-moving party bears the burden of proving the claim or

21   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

22   an essential element of the non-moving party's case; or (2) by demonstrating that the non-

23   moving party failed to make a showing sufficient to establish an element essential to that party's

24   case on which that party will bear the burden of proof at trial.  *See Celotex Corp*., 477 U.S. at

25   323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied

26   and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress &*

27   *Co.*, 398 U.S. 144, 159–60 (1970).

28

**James C. Mahan**
**U.S. District Judge**

1    If the moving party satisfies its initial burden, the burden then shifts to the opposing party

2    to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

3    *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

4    opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

5    that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

6    differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

7    809 F.2d 626, 630 (9th Cir. 1987).

8    In other words, the nonmoving party cannot avoid summary judgment by relying solely

9    on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d

10   1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

11   allegations of the pleadings and set forth specific facts by producing competent evidence that

12   shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

13   At summary judgment, a court's function is not to weigh the evidence and determine the

14   truth, but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*,

15   *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

16   justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

17   nonmoving party is merely colorable or is not significantly probative, summary judgment may be

18   granted.  *See id.* at 249–50.

19   The Ninth Circuit has held that information contained in an inadmissible form may still

20   be considered for summary judgment if the information itself would be admissible at trial.

21   *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253

22   F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily

23   have to produce evidence in a form that would be admissible at trial, as long as the party satisfies

24   the requirements of Federal Rules of Civil Procedure 56."))

25   . . .

26   . . .

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1

**III.    Discussion**

2

A.  Plaintiff's Motion

3

As an initial matter, plaintiff's motion for partial summary judgment was untimely and is

4

therefore DENIED.  The scheduling order in this case set the dispositive motion deadline for

5

September 21, 2022.  (ECF No. 25).  Plaintiff filed its motion November 2, 2022.  (ECF No. 36).

6

According to plaintiff, the parties stipulated to extend the deadline for it to respond to

7

defendant's motion and file a countermotion.  There is a stipulation that extends plaintiff's time

8

to respond to defendant's original (timely) motion.  (ECF No. 35).  But conspicuously absent

9

from that stipulation is any language extending the dispositive motion deadline itself.  Indeed,

10

the stipulation refers specifically to plaintiff's response to defendant's motion, not a motion of its

11

own.  (ECF No. 35).

12

Plaintiff provides emails between counsel that purport to show an agreement to extend

13

the dispositive motion deadline.  *See* (ECF No. 52-1).  Setting aside the fact that defendant's

14

opposition to the motion on the basis of timeliness severely undercuts the argument that there

15

was an agreement to an extension in the first place, the parties never sought permission from the

16

court to extend that deadline even if they had agreed.

17

A scheduling order "is not a frivolous piece of paper, idly entered, which can be

18

cavalierly disregarded without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610

19

(9th Cir. 1992).  It is quite the opposite; it is a binding order of the court, and its language is clear

20

here.   Dispositive motions were due on September 21, 2022, and a motion for summary

21

judgment is undoubtedly a dispositive motion.

22

Plaintiff cites the local rules of other courts, as well as court decisions from other districts

23

in an attempt to rescue its motion.  Those extra-jurisdictional local rules hold no weight, and the

24

court does not find the handful of non-binding decisions particularly persuasive.

25

Put simply, the parties had until September 21, 2022, to file dispositive motions.

26

Defendant met that deadline.  Plaintiff did not.  The court granted an extension for the time to

27

respond to defendant's motion; it did not grant an extension to file a new dispositive motion.  If

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    plaintiff wanted an extension, it should have asked for it.[1]  The court will not now retroactively

2    revise its scheduling order or its order granting the stipulated response extension solely because

3    plaintiff missed the deadline.  Plaintiff's motion is DENIED as untimely.

4          B.  Defendant's Motion

5          Defendant's timely motion seeks summary judgment on the ground that the policy does

6    not cover the expenses incurred from the investigation.  (ECF No. 32).  Specifically, defendant

7    argues that, because the Matula deposition did not occur, none of the subsequent investigation

8    could have arisen out of it, and thus the policy's provisions were not triggered.

9          The policy provides that

10                 **B.** The **Insurer** shall pay on behalf of the **Company** all **Loss**
                 which the **Insured**

11

12                 **Persons** shall be legally obligated to pay as a result of a **Claim**
                 (including an

13                 **Employment Practices Claim,** a **Securities Claim** or a **M&A**
                 **Claim)** first made

14

15                 against the **Insured Persons** during the **Policy Period** or the
                 **Discovery Period**

16                 for a **Wrongful Act,** but only to the extent the **Company** is
                 required or permitted

17

18                 by law to indemnify the **Insured Persons**.

19                 **C.** The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss**
                 which the

20                 **Insured Entity** shall be legally obligated to pay as a result of a
                 **Securities Claim**

21

22                 or a **M&A Claim** first made against the **Insured Entity** during the
                 **Policy Period**

23                 or the **Discovery Period** for a **Wrongful Act**.

24

25

26          [1] The court is particularly skeptical of the timing of plaintiff's motion.  Its filing date
     (November 2, 2022) placed the response deadline on November 23, 2022, the day before
     Thanksgiving.  It also allowed plaintiff the opportunity to have the "last word" by filing a reply
27   brief two weeks later on December 7, 2022, with the benefit of a fully briefed opposing motion
     for summary judgment.  While there does not appear to be any explicit bad faith conduct, there is
28   prejudice to defendant if the court were to allow plaintiff to invert the briefing schedule and get
     the last word on the legal issues at issue in the parties' cross-motions.

**James C. Mahan**
**U.S. District Judge**

- 6 -

1   (ECF No. 1-1 at 35) (emphasis in original).  It also requires that the insured give written notice of

2   any potential claim as soon as practicable, but no later than ninety days after the policy expires.

3   (*Id.*)

4          It defines an "inquiry" as "a request or demand for an **Insured Person** either to appear at

5   a meeting, deposition or interview or to produce documents relating to the business of the

6   **Company** or such **Insured Person's** capacity with the **Company**."   (*Id.* at 14) (emphasis in

7   original).  Finally, an endorsement to the policy expands coverage to treat "inquiries" as "claims"

8   in certain circumstances, and to allow a subsequent claim to relate back to a prior inquiry.

9   Specifically,

10          (2) If, during the **Policy Period**, the **Insureds** first become aware
            of an **Inquiry**, and if the **Insureds** give written notice to the
11          **Insurer** as soon as practicable ... then

12          the **Inquiry** shall be treated as a **Claim** under this Policy and the
            reasonable and
13
            necessary costs, charges, fees and expenses incurred by an **Insured
14          Person** solely

15          in connection with his or her preparation for and response to the
            **Inquiry** shall be
16
            covered .... Any other **Claim** which arises out of such **Inquiry**
17          shall be deemed

18          to have been first made at the time such written notice of the
            **Inquiry** was
19
            received by the **Insurer**….
20

21   (*Id.* at 23) (emphasis in original).

22          This provision is the source of the disagreement between the parties.  According to

23   plaintiff, the claim it made regarding the investigation into JanOne "arises out" of the Matula

24   deposition, which the parties agree would have been an inquiry insofar as it was based on

25   Matula's role at JanOne.  Defendant, on the other hand, contends that because the Matula

26   deposition never happened, nothing could have arisen from it.

27

28

**James C. Mahan**
**U.S. District Judge**

1      Interpreting the policy as written, the court agrees with defendant.  Because the Matula

2  deposition never occurred, it is impossible to know whether the deposition would have related to

3  his capacity as a JanOne employee and thus as an insured person under the policy.

4      The parties do not dispute that the planned Matula deposition was the only JanOne-

5  related event that took place while the policy was active.  The next event, the issuance of a

6  subpoena to Mark Szafranowski, did not occur until more than three months after the policy

7  expired.  Thus, coverage for the JanOne investigation is premised on the Matula subpoena

8  triggering that coverage, which it did not.

9      Taking the policy piece by piece, a subpoena qualifies as an inquiry only when it seeks

10  information "relating to the business of [JanOne] or such **Insured Person's** capacity with

11  [JanOne]."  (ECF No. 1-1 at 14) (emphasis in original).  If an inquiry occurs, it may then be

12  treated as a claim, and any subsequent claim that "arises out of" the initial inquiry shall be

13  covered, even if it occurs after the expiration of the policy.  Thus, for the relation back provision

14  to trigger in the first place, there must be an inquiry.

15      Here, Matula held dual roles as a director of JanOne and the "Head of Investor Relations"

16  for Live Ventures.  All communications he received from the SEC, including the subpoena itself,

17  bore the caption "Re: In the Matter of Live Ventures, Inc."  Defendant explicitly reserved its

18  rights when acknowledging receipt of plaintiff's notice of the purported inquiry, and it notes

19  specifically that it "is unable to determine whether the subpoena was issued to Mr. Matula in his

20  [JanOne] capacity, his [Live Ventures] capacity or both.  Therefore, [defendant] request[s] a

21  copy of the deposition transcript when available. Following review of that transcript, [defendant]

22  will be in a better position to determine the capacity issue."  (ECF No. 32-7 at 2).

23      Of course, the deposition never occurred.  Matula did not provide any documents to the

24  SEC, nor did he ever provide any sworn testimony.  It is therefore impossible for anyone to

25  know in what capacity the SEC sought his cooperation.  That being the case, there was no

26  inquiry as defined under the policy, and the subsequent investigation could not have arisen from

27  an inquiry that did not occur.

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1         Thus, summary judgment in favor of defendant is appropriate.   There is no genuine

2    dispute of material fact.  The Matula subpoena/planned deposition did not trigger coverage under

3    the policy because it did not relate to his capacity as an insured person.  There is thus no way for

4    the remainder of the investigation to arise out of it.   Having decided this threshold issue, the

5    court need not address either the parties' extensive arguments as to the meaning of the phrase

6    "arises out of."   Nor must the court address the parties' choice of law dispute as both of the

7    alleged jurisdictions (Minnesota or Nevada) would interpret the relevant provision the same way.

8    **IV.    Conclusion**

9         Accordingly,

10        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for

11   summary judgment (ECF No. 32) be, and the same hereby is, GRANTED.

12        IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (ECF

13   No. 36) be, and the same hereby is, DENIED.

14        The clerk is instructed to enter judgment for the defendant and close the case.

15        DATED July 5, 2023.

16

17                              UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 9 -